HAROLD M. BRODY (SBN 084927)
hbrody@proskauer.com
SAMUEL G. CLEAVER (SBN 245717)
scleaver@proskauer.com
JULIA BRODSKY (SBN 266177)
jbrodsky@proskauer.com
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, CA 90067-3206
Telephone: (310) 557-2900
Facsimile: (310) 557-2193

Attorneys for Defendant,
SPRINT/UNITED MANAGEMENT
COMPANY, INC., erroneously sued as
SPRINT NEXTEL CORP.



FILED
FEB 13 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| KIM SNOWDEN,<br><br>                  Plaintiff,<br><br>      v.<br><br>SPRINT NEXTEL CORPORATION, AND DOES 1-20,<br><br>                  Defendants. | Case No. **C13-0653**<br><br>(Alameda County Superior Court Case No. RG12650432)<br><br>**DEFENDANT SPRINT/UNITED MANAGEMENT COMPANY, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**<br><br>[28 U.S.C. §§ 1332, 1441 & 1446]<br><br>*Filed concurrently with Declaration of Harold M. Brody in Support of Notice of Removal; Declaration of Stefan K. Schnopp in Support of Notice of Removal; Civil Cover Sheet; Certificate of Interested Entities or Persons; Notice of Related Cases*<br><br>Action Filed: October 3, 2012 |

DEFENDANT SPRINT/UNITED MANAGEMENT COMPANY, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1  TO THE CLERK OF THE ABOVE-TITLED COURT:

2  PLEASE TAKE NOTICE that Defendant Sprint/United Management Company, Inc. ("Defendant" or "SUMC"), initially erroneously sued herein as Sprint Nextel Corporation, by and through its undersigned counsel, contemporaneously with the filing of this Notice, hereby effects removal of the above-referenced action from the Superior Court of the State of California, County of Alameda, to the United States District Court for the Northern District of California. This removal is based on 28 U.S.C. §§ 1332, 1441, and 1446 and, specifically, on the following grounds:

## JURISDICTION AND VENUE

1. This action is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332, and one which may be removed to this Court pursuant to 28 U.S.C. § 1441(b) because it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332, 1441(a), 1446(b).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(c)(2), 1391, and 1446.

## STATUS OF THE PLEADINGS

3. On or about October 3, 2012, an action was commenced in the Alameda County Superior Court entitled *Kim Snowden v. Sprint Nextel Corporation*, Case No. RG12650432 (the "Action"), asserting the following claims for relief: (1) Violation of California Family Rights ("CFRA") (Cal. Gov't Code § 12945.2); and (2) Wrongful Termination in Violation of Public Policy.

4. The Complaint initially and erroneously named Sprint Nextel Corporation as the defendant. Sprint Nextel Corporation was never served.

5. On November 29, 2012, Plaintiff filed an Amendment to the Complaint, inserting the true name of Defendant SUMC instead of Doe 1. On January 18, 2013, service was effected on SUMC by way of a duly executed and dated Notice and Acknowledgment of Receipt – Civil. True and correct copies of the Summons, Acknowledgment, Complaint, Amendment to the

1

1 Complaint, and Civil Case Cover Sheet, are attached as Exhibit "A" to the Declaration of Harold
2 M. Brody ("Brody Decl."), filed concurrently herewith.

3     6.    On January 23, 2013, SUMC filed an Answer to the Complaint in the Alameda
4 Superior Court. A true and correct copy of the Answer is attached as Exhibit "B" to the Brody
5 Declaration.

6     7.    On or about February 6, 2013, Plaintiff dismissed defendant Sprint Nextel
7 Corporation and in its stead named SUMC as defendant. A true and correct copy of the Court-
8 entered dismissal of Sprint Nextel is attached as Exhibit "C" to the Brody Declaration.

9     8.    This Notice of Removal is being filed within 30 days of the date SUMC was
10 served with the Summons and Complaint and, thus, is timely filed pursuant to 28 U.S.C.
11 § 1446(b).

12     9.    Notice of this removal is being given to both the adverse party and state court
13 pursuant to 28 U.S.C. § 1446(d). (*See* Brody Decl., ¶¶ 5-6.) True and correct copies of the
14 Notice to Adverse Party of Removal of Civil Action as well as to the Notice to Superior Court
15 Clerk of Removal of Civil Action are attached to the Brody Declaration as Exhibits "D" and "E,"
16 respectively.

17 **DIVERSITY OF CITIZENSHIP**

18 **A.    Plaintiff Is A Citizen Of California**

19     10.    In his Complaint, Plaintiff alleges that he is a resident of the State of California.
20 (Brody Decl., ¶ 2, Ex. A (Compl., ¶ 9).) Moreover, Plaintiff was at the time of the filing of this
21 Action, and still is, a citizen of the State of California.

22 **B.    SUMC Is *Not* A Citizen Of California**

23     11.    Defendant SUMC was at the time of filing of this Action, and still is, a
24 corporation incorporated under the laws of the State of Kansas, having its corporate and
25 operational headquarters in Overland Park, Kansas. (*See* Declaration of Stefan K. Schnopp
26 ("Schnopp Decl."), ¶ 4, filed concurrently herewith.) As a result, Defendant is a citizen of
27 Kansas, but not of California, and was neither incorporated nor had its principal place of

28

2

business in California. (*See id.*) Accordingly, there is complete diversity among the parties and removal is proper. 28 U.S.C. § 1332(c)(1).

12. A corporation's principal place of business is determined by the "nerve center" test. *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). Under this test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id.* Relevant considerations under the "nerve center" test include (i) where the directors and stockholders meet; (ii) where the company's executives live and have their offices; (iii) where the administrative and financial offices are located and the records kept; (iv) where the corporate income tax return is filed; (v) where the "home office" is located; and (vi) where day-to-day control of the business is exercised. *See id.*; *see also Unger v. Del E. Webb Corp.*, 233 F. Supp. 713, 716 (N.D. Cal. 1964).

13. SUMC's "nerve center" is located in Overland Park, Kansas. SUMC is a Kansas corporation with its corporate headquarters located at 6200 Sprint Parkway, Overland Park, Kansas 66251-6117. (Schnopp Decl., ¶ 4.) Out of its Kansas headquarters, SUMC provides management, professional, financial, technical, administrative and advisory services to the entities affiliated with its parent company. (*Id.*, ¶ 3.) Thus, the administrative functions crucial to SUMC's day-to-day operations are conducted at its Overland Park, Kansas location.

14. Because SUMC's "nerve center" is in Kansas, its principal place of business is Kansas. Accordingly, the company is, and has been at all times since this action commenced, a citizen of Kansas, and not a citizen of California.

C. **Complete Diversity Exists As No Other Parties Have Been Served**

15. Plaintiff names as defendants "Does 1 through 20, inclusive," but acknowledges that "[t]he true names and capacities, whether individual, corporate, associate or otherwise, and the true involvement of defendants herein sued as DOES 1 through 20, inclusive are unknown to Plaintiff." (Compl., ¶ 11.) The Doe defendants are wholly fictitious. The Complaint does not set forth the identity or status of any of the fictitious defendants because they are unknown, nor

3

does it set forth any charging allegations against them. The citizenship of defendants sued under fictitious names is to be disregarded for the purposes of determining diversity jurisdiction and therefore cannot destroy the diversity of citizenship that exists between the parties in this Action. *See* 28 U.S.C. § 1441(a); *accord Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1980).

16. SUMC is informed and believes that no other party is named or has been served as of the date of this Notice of Removal. (Brody Decl., ¶ 7.) Accordingly, there is complete diversity among the parties and removal of this matter to federal court is proper. 28 U.S.C. § 1332(c)(1).

**BASIS FOR AMOUNT IN CONTROVERSY EXCEEDING $75,000**

17. In the Complaint, Plaintiff pleads claims for, *inter alia*, numerous alleged violations of CFRA, including failure to provide protected leave. Plaintiff also alleges a claim for wrongful termination in violation of public policy. In connection with these claims, Plaintiff seeks to be compensated for "compensatory damages, including front pay, back pay, and benefits" (Compl., ¶ 38) and, elsewhere in the Complaint, for "damages in the form of lost future earnings, benefits, and/or other prospective damages" (Compl., ¶¶ 41, 49); for emotional distress damages, which include "embarrassment, humiliation, mental and emotional pain, distress and discomfort" (*id.*, ¶¶ 38, 42, 50); for punitive damages (*id.*, ¶¶ 38, 43, 51; Prayer, ¶ 3); for psychological damages, "including stress and depression" (Prayer, ¶ 4); for attorneys' fees and costs pursuant to California law (Compl., ¶ 44; Prayer, ¶ 5); and for costs of suit (Prayer, ¶ 6.)

18. The Complaint also specifically seeks an order awarding Plaintiff compensatory damages of $1 million including but not limited to wages, earnings, and other compensation damages. (*See* Prayer, ¶ 2.) This amount excludes the additional punitive damages, psychological damages, reasonable attorneys' fees, all costs of suit, and other relief that Plaintiff seeks. (*See* Prayer, ¶¶ 3-7.) Therefore, the amount in controversy "more likely than not" exceeds the jurisdictional minimum of $75,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *see Jackson v. Am. Bankers Ins. Co. of Fla.*, 976 F. Supp. 1450, 1453

4

(S.D. Ala. 1997) (concluding that the appropriate measure of amount in controversy is the litigation value, assuming all allegations in the complaint are true and the jury returns a verdict for plaintiff on all claims made in the complaint). Furthermore, the multitude of types of damages Plaintiff seeks, including attorneys' fees, emotional distress damages, and punitive damages, demonstrates there is ample reason to conclude that the damages sought are in excess of the jurisdictional minimum. *See Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365 (9th Cir. 1982) (in determining whether a complaint meets the $75,000 amount in controversy threshold, a court properly may consider the value of claims for attorneys' fees as well as damages); *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 241 (1943) (amount in controversy requirement met if plaintiff "might recover" award of compensatory and punitive damages in excess of amount in controversy requirement).

19. The removing defendant may make the requisite showing by either (1) demonstrating that it is "facially apparent" from the complaint that the claims are likely to exceed $75,000 (*e.g.*, claims of punitive damages, claims entitling plaintiff to recovery attorneys' fees, etc.); or (2) setting forth facts in the notice of removal that support a finding of the requisite amount under a "preponderance of evidence" standard. *See, e.g., Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999); *Guglielmino v. McKee Foods, Inc.*, 506 F.3d. 696, 699 (9th Cir. 2007) (citing *Sanchez*, 102 F.3d at 404). As shown herein, under either standard, Plaintiff has placed in controversy an amount exceeding $75,000, exclusive of interest and costs.

A. **Compensatory Damages**

20. During the years 2010 and 2011, the last two full years of Plaintiff's employment with SUMC, Plaintiff's annual SUMC salary was approximately $24,440.00 in wages, commissions, and other compensation. (Schnopp Decl., ¶¶ 5, 6.) Based on this salary, Plaintiff's potential damages would be calculated as follows: Plaintiff earned approximately $235.00 per week [$24,440.00 per year/ 104 weeks = $235.00 per week]. Accordingly, as of the date of this Notice of Removal, Plaintiff could be entitled to over $11,750.00 in lost back pay [$235.00 per week x 50 weeks = $11,750.00].

21. Moreover, as discussed above, Plaintiff's Complaint alleges that he is seeking $1 million in compensatory damages. (*See* Prayer, ¶ 2.) Where, as here,

> 'the amount in controversy is met by the express allegations of the plaintiff's complaint . . . [i]t would, of course, make sense to accord the plaintiff's own claim some weight in determining the amount in controversy. As noted by the Supreme Court, this is especially true where the complaint was originally filed in state court (with the requisite federal jurisdictional amount pleaded in the request for relief) because it is highly unlikely in that instance that the plaintiff would have inflated his request for damages solely to obtain federal jurisdiction. Consequently, where the state court complaint itself states damages in an amount sufficient to obtain federal diversity of citizenship jurisdiction, by way of removal, and the defendant does in fact remove the case to federal court, it would make very good sense to require proof to a legal certainty that the plaintiff cannot recover damages equal to or greater than the jurisdictional amount.'

*Sanchez*, 102 F.3d at 402 (quoting *Garza v. Bettcher Indus., Inc.*, 752 F. Supp. 753, 755-56 (E.D. Mich. 1990)). *See also* 28 U.S.C. § 1446(c)(2) (when removal is sought on diversity grounds, generally "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy").

22. Accordingly, Plaintiff's claims for compensatory damages far exceed the minimum amount in controversy threshold and this matter is properly in federal court.

**B.     General Damages**

23. The amount in controversy analysis also accounts for general damages, exclusive of costs and interest. *See Ajimatanrareje v. Metro. Life Ins. Co.*, 1999 WL 319216, at *4-5 (N.D. Cal. May 12, 1999) (finding that emotional distress damages "may be considered in the amount in controversy even where not clearly pled in the complaint"). Indeed, Plaintiff's emotional distress damages alone could easily exceed $75,000. *See, e.g.*, *Stallworth v. Shuler*, 777 F.2d 1431 (11th Cir. 1985) (award of $100,000 upheld for emotional distress resulting from discrimination even in absence of medical treatment); *Rowlett v. Anheuser-Busch Inc.*, 832 F.2d 194 (1st Cir. 1987) (award of $123,000 for emotional distress); *Kinsey v. Salado Ind. Sch. Dist.*, 916 F.2d 273 (5th Cir. 1990) (award of $250,000 upheld).

C. **Punitive Damages**

24. Punitive damages are also included in calculating the amount in controversy if they are recoverable under state law. *Davenport v. Mut. Beneficial Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963); *see also Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 2003). In his Complaint, Plaintiff alleges that SUMC committed the acts described "oppressively, maliciously, fraudulently, and/or outrageously toward [plaintiff], with conscious disregard for his known rights and with the intention of causing, and or willfully disregarding the probability of causing unjust and cruel hardship to [plaintiff]." (*See, e.g.*, Compl., ¶¶ 43, 51.) If Plaintiff succeeds in establishing these allegations, he could be entitled to punitive damages under California Civil Code § 3294. California law does not provide specific monetary limitations on the amount of punitive damages that may be awarded under the statute; rather, the proper amount of punitive damages is determined based on reprehensibility of the defendant's misdeeds, the ratio between compensatory and punitive damages, and the ratio between damages the defendant's net worth. *Boyle v. Lorimar Prods., Inc.*, 13 F.3d 1357, 1359-60 (9th Cir. 1994). Indeed, courts have recognized that an award for punitive damages can be significant and that, in many cases, a punitive damages award could itself establish the amount in controversy. *See, e.g., Aucina v. Amoco Oil Co.*, 871 F. Supp. 332, 334 (S.D. Iowa 1994) (discrimination and wrongful termination case noting that purpose of punitive damages is to capture the defendant's attention and to deter others from similar conduct, and, thus, the plaintiff's claim for punitive damages could alone exceed the jurisdictional minimum).

E. **Attorneys' Fees**

25. Additionally, Plaintiff seeks attorneys' fees in connection with his CFRA claim. (*See* Compl., ¶ 44; *see also* Prayer, ¶ 5.) Where a state statute provides for attorneys' fees to be awarded to a successful litigant, the amount claimed thereunder may be taken into account in determining whether the jurisdictional minimum has been reached. *See, e.g., Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be

7

included in the amount in controversy"); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365 (9th Cir. 1982) (in determining whether a complaint meets the $75,000 amount in controversy threshold, a court properly may consider the value of claims for attorneys' fees as well as damages).

26. While Plaintiff's attorneys' fees cannot be precisely calculated, it is reasonable to assume that they could exceed any damages award. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002); *Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 613 (9th Cir. 2000) (recognizing that an award of attorneys' fees of $376,520 could be appropriate in a discrimination case where the jury awarded compensatory damages of only $30,000). Indeed, SUMC anticipates that there will be extensive written discovery, depositions, motion practice, and at least a three- to five-day trial. (*See* Brody Decl., ¶ 8.) Plaintiff's counsel's firm is believed to be well regarded, and its attorneys are known to be experienced in employment law. (*Id.*) Accordingly, it is reasonable to assume that their billing rates are comparable to those of attorneys at the major plaintiffs' firms in San Francisco. (*Id.*)

27. Accordingly, the attorneys' fees that would be recoverable by Plaintiff in the event he prevails further establish that the amount in controversy more likely than not exceeds the $75,000 threshold.

**CONCLUSION**

28. Since the amount in controversy minimum is met, the requirements for removal pursuant to 28 U.S.C. §§ 1332(a) and 1441(b) are satisfied. Furthermore, because Plaintiff and SUMC are citizens of different states, and because the Court may disregard the citizenship of any Doe defendants, there is complete diversity of citizenship between the parties and the Court has original jurisdiction over the Complaint and each alleged cause of action therein under 28 U.S.C. § 1332. The Complaint and the state court action may thus be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441.

29. To the extent the Court has reservations about the removal or is inclined to remand this Action, SUMC respectfully requests that the Court first issue an order to show cause as to why the case should not be remanded and afford the parties an opportunity to provide the

8

Court with full briefing and argument. Should Plaintiff move to remand this case to the state court on grounds that the minimum amount in controversy is not met, he should be required to stipulate that his damages shall not exceed $75,000. Such a procedure is warranted as a remand order is not subject to review.

WHEREFORE, SUMC hereby provides notice that case number RG12650432 has been removed from the Superior Court of the State of California for the County of Alameda to this Court for all further proceedings.

Dated: February 13, 2013

PROSKAUER ROSE LLP
HAROLD M. BRODY
SAMUEL G. CLEAVER
JULIA BRODSKY

By: *[signature]*
Julia Brodsky

Attorneys for Defendant
SPRINT/UNITED MANAGEMENT COMPANY, INC.